El Pueblo de Puerto Rico, demandante y apelado, *v.*
Ulpiano Méndez Ortiz, acusado y apelante.

Núm. 10550.—*Sometido:* Noviembre 16, 1944. *Resuelto:* Diciembre 4, 1944.

*Federico E. Virella,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

Ulpiano Méndez fué convicto de un delito de mutilación y no estando conforme con la sentencia de un año de presidio que le fué impuesta, apeló. Basa su recurso en tres señalamientos de error, los cuales pasamos a considerar y resolver en el orden en que han sido expuestos.

Que el acusado fué juzgado y convicto sin un debido proceso de ley, por el hecho de no haber la Corte declarado con lugar la moción impugnando el panel general de jurados.

El fundamento de dicha moción fué que la desinsaculación del panel efectuada ante el Juez Janer, uno de los jue-

ces de la Corte de Distrito de Humacao, es contraria a la ley y por tanto constituye un error, toda vez que dicha desinsaculación debió hacerse ante los dos jueces de dicha corte.

El apelante ha sido inducido a error por el cometido al traducir al español el texto inglés de los artículos 215 y 219 del Código de Enjuiciamiento Civil de California, con los cuales se formó el artículo 200 de nuestro Código de Enjuiciamiento Criminal. El artículo 215 del Código de California, que es el equivalente del primer párrafo del artículo 200 del nuestro, lee así:

"Immediately upon the order mentioned in the preceding section being made, the clerk shall, *in the presence of the court*, proceed to draw the jurors from the 'trial jury box.' " (Bastardillas nuestras.)

Al preparar el proyecto de ley para la aprobación de la Legislatura, el Código fué redactado en español y por un error de tradución el primer párrafo del artículo 200, tomado del artículo 215 del Código de California, supra, se tradujo para leer así:

"Inmediatamente después de haberse dictado la providencia indicada en el artículo anterior, el secretario del tribunal procederá, *en presencia de los jueces*, a sacar de la urna los nombres de los jurados en la forma siguiente:" (Bastardillas nuestras).

Aprobado el Código en el idioma español, al traducirlo al inglés se perpetuó el error originalmente cometido, quedando el texto inglés del primer párrafo del artículo 200 redactado así:

"Immediately upon the order mentioned in the preceding section, being made, the secretary or clerk of the court, shall, *in the presence of the judges*, proceed to draw the jurors from the box as follows:" (Bastardillas nuestras).

Habiendo sido aprobado el Código de Enjuiciamiento Criminal en marzo 1 de 1902, cuando todas y cada una de las cortes de distrito tenían un solo juez, no es posible llegar a la conclusión de que la intención legislativa fuera la de que la desinsaculación del panel de jurados tuviera nece-

sariamente que verificarse en la presencia de más de un juez. Esa hubiese sido una condición imposible de cumplir, pues no habiendo más que un juez en cada corte nunca hubiese sido posible efectuar una desinsaculación ''en presencia de los jueces''. Resolvemos, por lo tanto, que la desinsaculación del jurado ante una corte de distrito presidida por el juez de distrito o por uno de los jueces del distrito, si hubiere más de uno, es perfectamente legal. No se cometió el error señalado.

■ Que la corte inferior erró al admitir como prueba de *rebuttal* una declaración prestada por el acusado ante el Juez de Paz de Cidra, el día siguiente al del suceso.

La declaración fué ofrecida por el fiscal con el propósito de desvirtuar la teoría de la defensa, según la cual el acusado se había visto obligado a herir a su adversario para evitar que éste le matase. Los testigos de defensa declararon en el sentido de que la víctima, Monserrate Santos, en actitud violenta pretendió continuar bailando en casa del acusado después que éste había dado por terminado el baile; y que al intervenir el acusado, Monserrate lo agredió con un puñal, viéndose obligado el acusado a defenderse con un machete.

En la declaración prestada por el acusado, éste declaró que algunos de los concurrentes al baile que se celebraba en su casa se pusieron a jugar topos en el batey; que allí surgió una discusión entre Carmelo Alejandro y Fundador Santos; que estando ambos en actitud violenta y a punto de irse a las manos, el acusado les llamó la atención para que no promovieran escándalos en su casa; que entonces Santos, Bienvenido Jiménez y Monserrate Santos Martínez se dieron por ofendidos, sacaron sus cuchillos y acometieron al acusado, y que el acusado tuvo que defenderse con un machete, hiriendo a Monserrate Santos y a Fundador.

Después de un estudio detenido de toda la prueba, opinamos que la declaración voluntariamente prestada por el

acusado, la cual contradice las declaraciones de sus testigos, era admisible como prueba de rebuttal. No erró la corte inferior al admitirla.

█ █ Que el veredicto es contrario a la prueba.

Se trata de un caso en que las teorías y la evidencia ofrecida para sostener cada una de ellas son contradictorias. El jurado, que es el llamado a dirimir el conflicto de teorías y de pruebas, dió crédito a los testigos de El Pueblo. Y siendo la prueba de cargo suficiente para sostener el veredicto, es nuestro deber respetarlo y confirmar la sentencia.